UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNIVERSAL RESOURCES HOLDINGS, INC.,

                Plaintiff,

v.

                **DECISION AND ORDER**
                17-CV-423S

EHM ENERGY PARTNERS, INC.,

                Defendant.

## I. INTRODUCTION

In this action, Universal Resources Holdings, Inc. ("Universal") seeks to enforce two promissory notes against EHM Energy Partners, Inc. ("EHM"). Presently before this Court are the parties' cross motions for summary judgment. (Docket Nos. 1-2, 9.) For the reasons that follow, both motions are denied.

## II. BACKGROUND

### A. Facts

In 2005, Universal and EHM began working together on oil and gas projects. (Affidavit of John J. Nalbone, Jr. ("Nalbone Aff."), Docket No. 13, ¶ 5; Affidavit of Thomas B. Corby ("Corby Aff."), Docket No. 9-3, ¶ 5.) Universal was represented by its president, John J. Nalbone, Jr.; EHM was represented by its due diligence agent and corporate secretary, Thomas Corby. (Nalbone Aff., ¶¶ 1, 7, 8; Corby Aff., ¶ 5.)

In late 2005, Nalbone and Corby met to discuss drilling oil and gas wells in New York and Pennsylvania. (Nalbone Aff., ¶ 8; Corby Aff., ¶ 5.) Corby told Nalbone that EHM was interested in retaining Universal to construct the oil and gas wells for EHM on a "turnkey" basis—that is, for Universal to complete all steps necessary to make the oil

1

and gas well projects fully operable so that the only thing needed to run them would be to "turn a key"—and for Universal to then operate the wells for EHM. (Nalbone Aff., ¶ 9; Corby Aff., ¶ 5.) Corby further advised Nalbone that EHM would pay Universal the majority of the total purchase price for each project in cash, and then treat the remaining balance as a loan from Universal to EHM. (Nalbone Aff., ¶ 9.) Nalbone agreed to these payment terms. (Id.)

The parties thereafter collaborated on well-drilling projects in New York and Pennsylvania based on agreements reached in 2006 and 2007. (Nalbone Aff., ¶¶ 10, 25.) For the 2006 project, the parties agreed to collaborate on seven wells. (Nalbone Aff., ¶ 10.) Universal agreed to construct and operate the wells in exchange for EHM paying it $2,072,000, of which $1,781,920 was to be paid in cash and $290,080 was to be treated as a loan from Universal to EHM. (Nalbone Aff., ¶ 10; Corby Aff., ¶ 5.) For the 2007 project, the parties agreed to collaborate on five more wells under their turnkey arrangement—four in New York, one in Pennsylvania. (Nalbone Aff., ¶ 25.) In exchange for Universal constructing and operating the five wells, EHM agreed to pay $1,600,000—$1,360,000 in cash and $240,000 as a loan from Universal to EHM. (Nalbone Aff., ¶ 25; Corby Aff., ¶ 5.)

While the cash payments appear undisputed, the parties have differing views concerning the terms of the loans from Universal to EHM. For the 2006 project, Universal maintains that EHM promised to pay it the $290,080 balance plus 4.6% interest per year in monthly installments of principal and interest until the loan was fully paid or by November 1, 2015, whichever was earlier. (Nalbone Aff., ¶ 17.) For the 2007 project,

2

Universal maintains that EHM promised to pay it the $240,000 interest-free balance in monthly installments until the loan was fully paid or by November 1, 2016, whichever was earlier. (Nalbone Aff., ¶ 32.)

In contrast, EHM maintains that Corby and Nalbone agreed that EHM would repay both loans solely from a deduction by Universal of a fixed percentage of the net revenues to be paid to EHM from the drilling projects. (Corby Aff., ¶¶ 6, 20-22.) For the 2006 project, Universal was to deduct 20% of the net revenue to be paid to EHM. (Corby Aff., ¶ 6.) For the 2007 project, Universal was to deduct 35% of the net revenue to be paid to EHM. (Id.) According to Corby, he and Nalbone never discussed or agreed that Universal could recover from EHM under any promissory note independent of the fixed percentage of net revenue due to EHM from the 2006 and 2007 projects. (Corby Aff., ¶¶ 6, 23.)

The parties also have differing views concerning which party would be financially liable for plugging the wells. Nalbone maintains that, consistent with industry standards, EHM agreed to pay for the eventual plugging of each well in both the 2006 and 2007 projects—$18,000 per well in New York; $23,000 per well in Pennsylvania. (Nalbone Aff., ¶¶ 10, 25; Reply Affidavit of John J. Nalbone, Jr. ("Nalbone Reply Aff."), Docket No. 10-1, ¶¶ 11, 12.) Corby represents that he and Nalbone never discussed or agreed that EHM would be financially responsible for plugging the wells. (Corby Aff., ¶¶ 10, 11, 18.)

Universal contends that the parties memorialized their 2006 and 2007 agreements in two Turnkey Drilling Agreements, dated December 2006 and December 2007 ("2006 TDA" and "2007 TDA") and two promissory notes, dated December 2006 and December

3

2007 ("2006 Note" and "2007 Note").  (Nalbone Aff., ¶¶ 11, 26.)   But none of these four documents are executed.  (Nalbone Aff., ¶¶ 13, 28; Corby Aff., ¶¶ 4, 12.)   Nalbone states that neither he nor Corby signed the documents because they considered execution of the contracts an unnecessary formality.   (Nalbone Aff., ¶¶ 13, 28.)

In contrast, Corby maintains that he and Nalbone reached only oral agreements. (Corby Aff., ¶¶ 4, 6, 7, 8.)   He claims that Nalbone never sent the 2006 or 2007 TDAs to EHM for execution at the time he and Nalbone reached their oral agreements or at any time thereafter.  (Corby Aff., ¶¶ 7, 8, 16.)   Corby asserts that neither the 2006 TDA nor the 2007 TDA reflect his oral agreements with Nalbone, and in fact, he believes that Nalbone falsified these two agreements and two promissory notes by backdating them in an effort to support Universal's present claims against EHM.   (Corby Aff., ¶ 17.)

In response, Nalbone denies falsifying or backdating the relevant documents and insists that he memorialized the agreements he reached with Corby in the 2006 and 2007 TDAs contemporaneous to those negotiations, including their agreement that EHM would pay to plug the wells.  (Nalbone Reply Aff., ¶¶ 6, 7.)   Nalbone represents that he executed some of the 2006 and 2007 documents and sent them to Corby to be countersigned, but rather than countersigning, EHM simply began performing the agreements.   (Nalbone Reply Aff., ¶¶ 6, 7.)

Universal constructed and operated the twelve wells and performed all of its obligations under the 2006 and 2007 TDAs and the 2006 and 2007 Notes.   (Nalbone Aff., ¶¶ 14-16, 29-31.)   In exchange, EHM paid Universal $1,781,920 in cash for the 2006 project and $1,360,000 in cash for the 2007 project.   (Nalbone Aff., ¶¶ 14, 29; Corby Aff.,

¶¶ 7, 8.) EHM also paid Universal $104,285.15 and some interest against the 2006 Note and $149,892.94 against the 2007 Note. (Nalbone Aff., ¶¶ 22, 37.)

According to Universal though, EHM did not meet either the November 1, 2015 deadline for repayment of the 2006 Note or the November 1, 2016 deadline for repayment of the 2007 Note. (Nalbone Aff., ¶¶ 19, 34.) Universal therefore maintains that $280,484.85 remains due and owing on the 2006 Note, consisting of $185,794.85 in outstanding principal and $94,690 in outstanding interest, and $90,107.06 remains due and owing in principal on the 2007 Note. (Nalbone Aff., ¶¶ 19, 34.) Universal further maintains that EHM is liable for $231,000 in plugging costs. (Nalbone Aff., ¶¶ 24, 39.) EHM, on the other hand, contends that it paid all that was due under the 2006 and 2007 oral agreements (the two cash payments) and that nothing further, including plugging costs, is due and owing. (Corby Aff., ¶ 9.)

**B. Procedural History**

Universal commenced this action in New York State Supreme Court, Chautauqua County, on April 21, 2017, by way of a Motion for Summary Judgment in Lieu of Complaint, under N.Y. C.P.L.R. § 3213. (Docket No. 1-2.) EHM removed the action on May 16, 2017, under 28 U.S.C. §§ 1332 (a)(1), 1441, and 1446. (Docket No. 1.) It then responded to Universal's Motion for Summary Judgment in Lieu of Complaint and moved for summary judgment in its own favor on August 17, 2017. (Docket No. 9.) Universal filed a reply in further support of its motion and in opposition to EHM's motion on August 31, 2017.[1] (Docket No. 10.) This Court thereafter took the motions under advisement

---

[1] At this Court's direction, Universal also filed a corrected affidavit on April 17, 2019. (Docket Nos. 12, 13.)

without oral argument.

### III. DISCUSSION

Universal commenced this action in state court by way of a Motion for Summary Judgment in Lieu of Complaint under N.Y. C.P.L.R. § 3213. That provision provides a streamlined procedure to recover on an instrument for the payment of money under certain circumstances, combining pleading and motion practice into a single step, before issue is joined. See Dammers v. Wells Fargo Bank, N.A., 17-CV-2560 (NSR), 2018 WL 264519, at *1 (S.D.N.Y. Jan. 2, 2018) (citing Weissman v. Sinorm Deli, Inc., 88 N.Y.2d 437, 443, 646 N.Y.S.2d 308, 669 N.E.2d 242 (1996)). A motion for summary judgment in lieu of complaint removed to federal court is converted to a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. See Beaufort Capital Partners LLC v. Oxysure Sys., Inc., 16-CV-5176 (JPO), 2017 WL 913791, at *2 (S.D.N.Y. Mar. 7, 2017); Valley Nat'l Bank v. Oxygen Unlimited, LLC, No. 10 Civ. 5815, 2010 WL 5422508, at *2 (S.D.N.Y. Dec. 23, 2010) ("Plaintiff's motion for summary judgment in lieu of complaint will be treated as a motion for summary judgment made under Rule 56 of the Federal Rules and the papers already submitted to be a complaint and answer.").

Here, Universal argues that it is entitled to summary judgment because EHM is in default on the 2006 and 2007 TDAs and Notes, which it contends are valid instruments for the payment of money only. EHM, on the other hand, contends that there exist no valid instruments for the payment of money because the parties never executed any written agreements. It further maintains that Universal's claims are time-barred and precluded by New York's Statute of Frauds. EHM therefore seeks summary judgment

dismissing this action, or alternatively, maintains that issues of fact preclude summary judgment in Universal's favor. The parties' arguments are further discussed below.

### A. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a). A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S. Ct.1598, 26 L. Ed. 2d 142 (1970). "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004) (citations omitted).

But a "mere scintilla of evidence" in favor of the nonmoving party will not defeat summary judgment. Anderson, 477 U.S. at 252. A nonmoving party must do more than cast a "metaphysical doubt" as to the material facts, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); it must "offer

some hard evidence showing that its version of the events is not wholly fanciful," D'Amico v. City of N.Y., 132 F.3d 145, 49 (2d Cir. 1998). That is, there must be evidence from which the jury could reasonably find for the nonmoving party. Anderson, 477 U.S. at 252.

In the end, the function of the court at the summary judgment stage is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).

This same standard applies to cross motions for summary judgment. See Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001). "[W]hen both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party. Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." Id. (citing Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993); Schwabenbauer v. Bd. of Educ., 667 F.2d 305, 314 (2d Cir. 1981)).

**B. New York Law**

New York C.P.L.R. § 3213 permits expedited treatment of actions "based upon an instrument for the payment of money only or upon any judgment." The instrument for the payment of money need not necessarily be a negotiable instrument, see Channel Excavators v. Amato Trucking Corp., 48 Misc.2d 429, 430 (Sup. Ct. Nassau Cty. 1965),

but "it must be clear from the instrument that there exists an unconditional obligation to make payment of the nature that 'a prima facie case would be made out by the instrument and a failure to make the payments called for by its terms,'" Dammers, 2018 WL 264519, at *1 (quoting Interman Indus. Prods., Ltd. v. R.S.M. Electron Power, Inc., 37 N.Y.2d 151, 154, 371 N.Y.S.2d 675, 332 N.Ed.2d 859 (1975)). If proof outside of the document or instrument is needed, other than simple proof of nonpayment or other *de minimis* proof, the document or instrument does not qualify for enforcement under C.P.L.R. § 3213. See Weissman, 88 N.Y.2d at 444. Most cases applying § 3213 involve commercial paper where the party charged has formally and explicitly acknowledged the indebtedness, though, again, a negotiable instrument *per se* is not required under the statute.[2] See Slade v. Newman, 32 Misc.3d 1244(A), at *2 (Sup. Ct. N.Y. Cty. 2011).

Here, Universal seeks to enforce the 2006 and 2007 TDAs and promissory notes. If it is determined that these documents are valid and contain unambiguous and unconditional promises to pay specified sums on specified dates, they may be enforced under § 3213. See DH Cattle Holdings Co. v. Kuntz, 165 A.D.2d 568, 570-71, 568 N.Y.S.2d 229 (3d Dep't 1991) (finding that a promissory note containing a "clear, unambiguous and unconditional promise to pay a specified sum on a specified date" was "clearly an instrument for the payment of money only within the meaning of C.P.L.R. 3213"); Coneco Corp. v. Atl. Energy Serv. Inc., 270 A.D.2d 691, 692, 704 N.Y.S.2d 732

---

[2] In New York, a written negotiable instrument is created where "(1) the instrument is signed by the maker; (2) it contains an unconditional promise or order to pay a sum certain; (3) it is payable on demand or at a definite [time]; and (4) it is payable to order or to bearer." Dammers, 2018 WL 264519, at *2 (citing N.Y. U.C.C. § 3-104 (1)(a)-(d)). Payment must be determinable from the instrument itself without reference to any outside source. See id. (citing N.Y. U.C.C. § 3-106, Comment 1).

(3d Dep't 2000) (same for written agreement).

"A promissory note is a type of instrument containing an unequivocal and unconditional obligation to repay the lender, executed by the Defendant." Dammers, 2018 WL 264519, at *2 (citing Lugli v. Johnston, 78 A.D.3d 1133, 1135, 912 N.Y.S.2d 108 (2d Dep't 2010)). "To establish prima facie entitlement to judgment as a matter of law on the issue of liability with respect to a promissory note, a plaintiff must show the existence of a promissory note executed by the defendant and the failure of the defendant to pay in accordance with the note's terms." Nunez v. Channel Grocery & Deli Corp., 124 A.D.3d 734, 734-35, 998 N.Y.S.2d 663 (2d Dep't 2015). Summary judgment is warranted when there are no genuine issues of fact as to these material requirements. See Torin Assocs., Inc. v. Perez, No. 15 Civ. 8043 (NSR), 2016 WL 6662271, at *4 (S.D.N.Y. Nov. 10, 2016) (citing Inland Mortg. Capital Corp. v. Realty Equities N.M., LLC, 71 A.D.3d 1089, 1090, 900 N.Y.S.2d 79 (2d Dep't 2010)). If the plaintiff sufficiently establishes these elements, the burden shifts to the defendant to establish by admissible evidence that triable issues of fact exist with respect to a bona fide defense. See Jin Sheng He v. Sing Huei Chang, 83 A.D.3d 788, 789, 921 N.Y.S.2d 128 (2d Dep't 2011).

**C. Analysis**

It is apparent that the parties agreed to collaborate on oil and gas drilling projects because Universal constructed and operated twelve wells and EHM remitted significant payment for them. But as the statement of facts above reveals, disputed issues of material fact abound concerning the terms of the agreements. For example, Universal contends that the parties had a written agreement; EHM contends that they had an oral

agreement. Universal contends that the 2006 and 2007 TDAs accurately memorialize the parties' agreements; EHM contends that the TDAs are inaccurate and fabricated. Universal contends that EHM agreed to pay plugging costs; EHM contends that it never made such an agreement. Universal contends that the 2006 and 2007 Notes are recourse notes; EHM contends that they are non-recourse notes. These material issues of disputed fact preclude summary judgment for either side.

Universal's motion for summary judgment must be denied because material issues of fact exist concerning whether there even exists a written instrument requiring payment, let alone one that contains an unambiguous and unconditional obligation to make sum-certain payments. Dammers, 2018 WL 264519, at *2. EHM challenges the documents as unexecuted and inaccurate, and worse, as fabrications. Universal counters that an executed instrument is not necessarily required if there is objective evidence of an intent to be bound or a party performs under the agreement. But at this stage, the evidence must be viewed in EHM's favor. Through that lens, EHM's cash payments, other performance, and subsequent letters must be viewed as consistent with the oral agreement that it alleges the parties reached, rather than as partial performance or acknowledgement of Universal's alleged written agreements.[3] So too, Corby's sworn affidavit disclaiming the accuracy of the terms in the written documents and challenging them as fabricated raises triable issues of material fact. For these reasons, summary judgment in Universal's favor is precluded.

---

[3] EHM's contention that the parties actually reached a similar alternate oral agreement factually distinguishes this case from those Universal relies on— Torin Assocs., 2016 WL 6662271; Commonwealth Land Title Ins. Co. v. Mattera, 208 A.D.2d 490, 491 (2d Dep't 1994); Bank Hapoalim B.M. v. Madison Carpet Corp., 103 Misc. 2d 522 (Sup. Ct. N.Y. Cnty., Mar. 17, 1980).

And for similar reasons, EHM is not entitled to summary judgment dismissing this case either. It first argues that the oral agreements between the parties are not enforceable under § 3213 and barred by the New York Statute of Frauds. But viewing the evidence in the light most favorable to Universal, a factfinder could credit its evidence that the parties memorialized their oral agreement in the tendered written documents, and EHM then performed under those written agreements. In other words, a factfinder could find the existence of a written agreement to pay and a breach of that agreement. And contrary to EHM's argument, such a claim would be timely because the alleged breaches occurred in 2015 and 2016, well within six years of the filing date of this action in 2017. See N.Y. C.P.L.R. § 213 (2) (setting 6-year statute of limitations for breach-of-contract claims). Consequently, summary judgment in EHM's favor is also precluded.

## IV. CONCLUSION

For the reasons stated above, the parties' cross motions for summary judgment are each denied. Before proceeding to trial, the parties are directed to engage in good-faith mediation efforts to determine whether a pretrial resolution of this matter can be reached.

## V. ORDERS

IT HEREBY IS ORDERED, that the parties' motions for summary judgment (Docket Nos. 1-2, 9) are DENIED.

FURTHER, that this case is REFERRED for alternative dispute resolution under Section 2.1.B of the Plan for Alternative Dispute Resolution in the United States District Court for the Western District of New York ("the ADR Plan").

FURTHER, that the parties shall confer and file a stipulation selecting a mediator by May 31, 2019.

FURTHER, that the initial mediation session shall be held no later than July 2, 2019.

FURTHER, that within 10 days of each mediation session, the mediator shall file a Mediation Certification setting forth the progress of mediation.

FURTHER, that the mediation process shall be completed by August 2, 2019.

FURTHER, that the parties shall timely comply with all relevant requirements of the ADR Plan, which is available at http://www.nywd.uscourts.gov.

FURTHER, that the parties shall appear before this Court on August 14, 2019, at 9:00 a.m. to report on the status of this case if it is not sooner resolved through mediation.

SO ORDERED.

Dated: May 20, 2019
       Buffalo, New York

                                            /s/William M. Skretny
                                             WILLIAM M. SKRETNY
                                           United States District Judge